**IN THE COURT OF APPEALS OF IOWA**

No. 20-1163
Filed November 4, 2020

**IN THE INTEREST OF T.M., L.M., and L.V.,**
**Minor Children,**

**R.M., Mother,**
    Appellant,

**T.M., Father of T.M. and L.M.,**
    Appellant.
_____

Appeal from the Iowa District Court for Appanoose County, William Owens, Associate Juvenile Judge.

The mother and the father of two of the children separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Mary Baird Krafka of Krafka Law Office, Ottumwa, for appellant mother.

Monte McCoy, Centerville, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Debra A. George of Griffing & George Law Firm, PLC, Centerville, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Vaitheswaran and Greer, JJ.

**GREER, Judge.**

The juvenile court terminated the mother's parental rights to fourteen-year-old L.V., twelve-year-old L.M., and seven-year-old T.M. The father of L.M. and T.M. also lost his parental rights.[1] The parents separately appeal the termination of their respective rights. Neither parent contests that the statutory grounds for termination were met. The mother argues for additional time to work toward reunification. In the alternative, because termination of her rights is not in the children's best interests, the mother maintains that the juvenile court should have established a guardianship with the maternal cousin rather than terminating the mother's rights. The father's sole argument on appeal is that the court should have established a guardianship instead of termination.

**I. Background Facts and Proceedings.**

The Iowa Department of Human Services (DHS) became involved with this family in May 2018 upon allegations the mother was using methamphetamine and then caring for the children. When confronted, the mother admitted the allegation was true. The mother and father agreed to work with DHS voluntarily, and the children at first remained in their care. But then the parents stopped cooperating with DHS, and each tested positive for methamphetamine and amphetamines in December 2018. Given this behavior, the children were removed from their care.

Around the same time the children were removed, the father left the family. Throughout the proceedings, he was not in contact with DHS and rarely attended

---

[1] The parental rights of L.V.'s father were also terminated. He does not appeal. Any reference to "the father" or "the parents" is a reference to the father of L.M. and T.M.

visits with the children.  At the time of the termination hearing in August 2020, the father testified he was in county jail.  He had recently entered guilty pleas to charges of theft and possession of methamphetamine, third or subsequent offense.  He was awaiting sentencing and knew he was facing up to five years in prison.  When asked to describe his contact with the children during the pendency of the proceedings, the father testified:

> I've tried to stay clear because of my actions, what I've been doing.  I didn't want to take any more troubles around my children and have any drugs while I was doing—when I was out doing what I was doing, I didn't want to be around the children.  That's why I left home and haven't been around.

He clarified that he continued to use methamphetamine and had not engaged in substance-abuse treatment in the nearly twenty months the children were out of his care.

The mother maintained contact with the children with supervised visits throughout their removal.  She generally attended visits and the visits went well overall.  But despite nearly ten substance-abuse evaluations and multiple attempts in which she started treatment, the mother continued to use methamphetamine at the time of the August 2020 termination hearing.  The mother shared her use was down—testifying she now used once or twice per week instead of every other day.  She stated her goal was to be drug free and she believed she could be so in one month.  When asked about her many substance-abuse evaluations but lack of follow through, the mother testified, "I basically just blew it off, and now I'm really trying, and that's all I can say."  The mother had been in her current outpatient substance-abuse treatment since early June and she participated in five of the

seven scheduled sessions.[2]   Although recommended earlier, she only started mental-health treatment for her feelings of anxiety and depression about a week before the termination hearing.

The children were originally placed with the maternal grandmother, but DHS became concerned the grandmother was allowing the mother to see the children without department-approved supervision.  In September 2019, all three children were moved to the home of their maternal cousin and her husband.  The children remained there at the time of the termination hearing,[3] and the maternal cousin and husband conveyed their willingness to adopt all three children and were enrolled in the necessary pre-adoption program.  According to the children's attorney and guardian ad litem (GAL), she separately spoke to the oldest two children about their wishes a few days before the termination hearing.  Neither objected to the termination of their parents' rights.  The GAL explained guardianships to the oldest child, but that child favored the termination option over a guardianship plan.

The mother asked the juvenile court to give her more time to achieve sobriety and work toward reunification with the children.  As an alternative to termination, both parents asked the court to establish a guardianship in the maternal cousin.

The juvenile court denied the request for an extension, noting a permanency order entered in December 2019 gave the parents more time, but neither "made

---

[2] The mother testified these sessions were taking place on the phone rather than in-person because of the COVID-19 pandemic.

[3] The oldest child—with court approval—moved out of state to live with another family member, but he chose to return to his cousin's home about one month later.

significant progress since [the children were] removed or since that order entered. The primary issues that brought about [DHS's] involvement concerned the parents' illegal substance use and their mental health. Neither parent has completed substance abuse treatment . . . ." The court also declined to establish a guardianship in lieu of termination, finding that placing the children

> in a guardianship would prevent [them] from reaching the permanency [they] deserve. The parents' request for a guardianship is merely a way of staving off termination of parental rights. [The mother] had made little or no progress since the removal order was entered, and while she is currently participating in substance abuse treatment she acknowledged ongoing use of methamphetamine as much as twice a week. [The father] has not had contact with [his children] for almost two years, and has done nothing in the way of services of substance abuse treatment to further the goal of reunification.

The court noted the oldest two children did not object to termination (the youngest child, who is only seven years old, was not asked). *See* Iowa Code § 232.116(3)(b) (providing the court may forgo termination if a "child is over ten years of age and objects to the termination"). Additionally, all three children were "settled, safe, and well cared for" in their cousin's home. The court determined this is not an exceptional case warranting a guardianship, concluding, "[G]iven the age of the child[ren], the length of time the child[ren] ha[ve] been removed, parents' lack of substantial progress toward reunification, the lack of a relationship between the child[ren] and father, and the availability of other more viable permanency options guardianship would not be appropriate."

The juvenile court terminated both parents' rights under Iowa Code section 232.116(1)(f) (2020). The father's rights were also terminated under section 232.116(1)(e). The mother and father separately appeal.

**II. Standard of Review.**

"We review termination proceedings de novo." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "The primary interest in termination proceedings is the best interests of the child." *Id.*

**III. Discussion.**

"[I]n termination of parental rights proceedings each parent's parental rights are separate adjudications, both factually and legally." *In re D.G.*, 704 N.W.2d 454, 459 (Iowa Ct. App. 2005). But insofar as the mother and father raise the same claims on appeal, we combine our analysis of their respective rights.

First, the mother maintains the juvenile court should have given her additional time to work toward reunification with the children. To do so, section 232.104(2)(b) "requires the court to make a determination the need for removal will no longer exist at the end of the extension." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). While the mother was participating in substance-abuse treatment at the time of the termination hearing, she was also admittedly still using methamphetamine one to two times per week. The mother testified she would be drug free in one month, but like the juvenile court, we do not find her testimony persuasive. The children had been out of the mother's care for approximately twenty months, and the mother was unable to achieve sobriety during that time. Additionally, the mother only began mental-health therapy about a week before the termination hearing. While the mother showed more commitment to engaging in services at the time of the termination hearing, the same problems that caused DHS to get involved still existed—twenty months after the children were removed and about twenty-eight months after DHS first offered services to the family. We

are unable to say a short extension would end the need for the children's removal, so we agree with the juvenile court that an extension is not appropriate.

Next, both the mother and the father claim the juvenile court should have established a guardianship in the maternal cousin rather than terminate their parental rights. The August 2020 hearing was a combined termination and permanency hearing, and the court had the option to enter an order transferring guardianship and custody of the children to a suitable person. *See* Iowa Code §§ 232.104(2)(d)(1) (allowing the court, after a permanency hearing, to enter an order transferring guardianship and custody of the children to a suitable person), 232.117(5) (allowing the court, after a termination hearing, to not order termination of parental rights but instead enter an order in accordance with several sections, including section 232.104). To establish the guardianship, the court must determine by clear and convincing evidence that "termination of the parent-child relationship would not be in the best interest of the child[ren]." *Id.* § 232.104(4)(a). Here, the oldest child confirmed he supported the termination of his mother's parental rights—even after guardianships were explained to him—and the middle child specifically said to the GAL that she did object to termination. *See In re A.S.*, 906 N.W.2d 467, 478 (Iowa 2018) (noting child's age and whether they stated a preference when considering a guardianship). What is more, "a guardianship is not a legally preferable alternative to termination." *Id.* at 477 (citation omitted). Guardianships can be challenged and dissolved. *See In re B.T.*, 894 N.W.2d 29, 32 n.2 (Iowa Ct. App. 2017) ("[T]here is a functional difference regarding the legal ramifications between a guardianship—which can be terminated and the child returned to the [parents]—and a termination of parental rights, after which parental

rights cannot be reinstated.").  While we have no crystal ball, given the parents' past performance, we find it better to opt for permanency and stability.  Termination of the parents' rights and adoption will provide the stability and permanency these children need and deserve.  *See A.S.*, 906 N.W.2d at 478.

For these reasons, we affirm the termination of the mother's and the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**